UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHILDREN'S ORCHARD, INC.,

    Plaintiff,                                       Civil No. 10-14379

v.                                                JUDGE BERNARD A. FRIEDMAN

TIFFANY CLARE JAECKE, et al.,

    Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**I.    Introduction**

Defendants, Paul Overton Thomas and Upsy Daizy, Inc. ("Defendants"), have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2), challenging the Court's exercise of personal jurisdiction over them. Pursuant to E.D.Mich.L.R. 7.1(f)(2), the Court will decide this motion without oral argument.

**II.    Background**

Plaintiff's complaint arises out of a Franchise Agreement between Plaintiff, Children's Orchard, Inc. ("COI"), and Defendants Tiffany and Kent Jaecke, Overton and Upsy Daizy, Inc.. COI is a children's resale business.

Defendant Tiffany Jaecke is a former franchisee of COI. Plaintiff alleges in its complaint that in order to avoid her post-termination contractual obligations and her outstanding debts to Plaintiff, Defendant Tiffany Jaecke, in conspiracy with her father, Paul Overton Thomas, fraudulently transferred the assets of her COI franchise shop to her father in name only, allegedly in repayment of an undocumented, antecedent debt. Plaintiff contends that together, the

Defendants conspired to defraud it, a Michigan creditor, and initiated their conspiracy at least two months prior to the fraudulent transfer.

Defendants purchased the internet domain name "www.upsydaizy.com" on May 4, 2010, in order to create a website for the Upsy Daizy store. On May 27, 2010, Defendants incorporated Upsy Daizy in Defendant Paul Overton Thomas's name. Meanwhile, Plaintiff's allege, Defendant Tiffany Jaecke had already known, prior to Upsy Daizy's official existence, that her COI store had to relocate and upgrade. Jaecke's COI store was moved to a new location and renamed in late July 2010. Plaintiff alleges that following the move, Defendants Upsy Daizy and Thomas, through his daughter Jaecke, conspired to misrepresent to Plaintiff that the store was closing, and that she had not found a new location for her COI store. Meanwhile, Tiffany Jaecke was advertising to customers that the COI store was "moving," and she rejected a viable offer from an outside party to purchase the store. Plaintiff claims that Defendants clearly formed their conspiracy to avoid their contractual obligations and debt to Plaintiff and to avoid remaining in the franchise system for the term of the franchise agreement.

Plaintiff contends that Thomas never claims to operate or supervise the store, nor does he claim any experience in children's resale. Further, Plaintiff alleges that Upsy Daizy is the "alter ego" of Tiffany Jaecke, that she manages the store, set up and maintains its presence in the internet, and hires its employees, including former employees of the former COI store. Plaintiff further states that the nature, purpose, equipment and manner of operation of the business has remained the same as when it was COI.

### III.  Analysis

**Personal Jurisdiction**

Personal jurisdiction vests in federal court if two conditions are met.  First, personal jurisdiction must arise under the forum state law.  In Michigan, M.C.L. § 600.705 states that limited personal jurisdiction arises if an individual, among other things, transacts business in the state or does or causes an act to be done, or consequences to occur, in the state, which results in an action in tort.  Second, the exercise of personal jurisdiction must satisfy constitutional due process requirements, and must accord with notions of "fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310 (1945).

#### 1.  Traditional Personal Jurisdiction Grounds

Michigan's long arm statute extends "general" or jurisdiction over nonresident individuals pursuant to M.C.L. § 600.701.  In order to be subject to general jurisdiction in Michigan, a nonresident individual must have been present in Michigan at the time when process is served or domiciled in Michigan at the time when process is served.  Defendants argue that the Court does not have personal jurisdiction over them, because they were not served in Michigan, they are not domiciled in Michigan, and they never consented to personal jurisdiction in Michigan.

Plaintiff did not serve the summons and complaint on Defendants in Michigan, but rather served Defendants by delivery of the summons and complaint to Defendants within Oklahoma.  In addition, Defendant Thomas has never been a resident of Michigan, and Upsy Daizy, Inc. is an Oklahoma Corporation.  In addition, Defendants never consented to the Court's personal jurisdiction over them, never designated a local agent for service of process, and are not party to

any agreement with a forum selection clause subjecting them to this Court's jurisdiction. Accordingly, Defendants argue that none of the traditional grounds for personal jurisdiction over a nonresident apply here, and Plaintiff does not really dispute these grounds.

### 2. Limited Personal Jurisdiction

Michigan's long-arm statute extends "limited" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.705:

> Sec. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
>
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
>
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
>
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Id.

Similarly, Michigan's long arm statute regarding jurisdiction over a corporation states, in

relevant part:

> Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. . .

MCL 600.715.

Defendants argue that the long arm statute does not apply to their activities, or lack thereof, within Michigan. Defendants argue that the Jaecke's, not them, had the contractual relationship with Plaintiff and, in fact, Defendants did not even know that Plaintiff was headquartered in Michigan until receiving the Complaint in this action. In support of their argument, Defendants compare their situation to that of defendants in Khalaf v. Benkers & Shippers Ins. Co., 62 Mich.App. 678 (1975). In that case, the Michigan Court of Appeals refused to exercise personal jurisdiction over an insurance agent from Illinois where an injured party, which had recovered a default judgment against an insured of the defendant insurance company for injuries sustained in Michigan, brought a negligence action against the insurer, which denied coverage under the policy, and the Illinois insurance agent who procured the policy for the insured. The court there found that there was not sufficient contact with Michigan to invoke limited personal jurisdiction over the Illinois agent.

*Khalaf* is inapplicable to the present facts, as *Khalef* involves an issue in which the Illinois Defendant had no direct involvement in the consequences to Plaintiff, and "did not start

the chain of events, nor could he control them." Id. Here, the allegations clearly state that Defendants are directly related to Plaintiff's injury, and Defendant Thomas specifically conspired with his daughter to injure Plaintiff.

In response, Plaintiff notes that Michigan's long arm statute has been interpreted as conferring "the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1298 (6th Cir. 1989). Plaintiff argues that Defendants acted as co-conspirators with Tiffany Jaecke, and thus personal jurisdiction exists over all Defendants in this case. In addition, Plaintiff contends that jurisdiction over Defendants would not offend "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, as Defendants' conduct was such that they "should reasonably anticipate being haled into court" here, *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980). Plaintiff argues that the concepts of "fair play" and "substantial justice" would be offended by permitting Defendants to get away with the intentional bad acts that they knew would affect and damage a Michigan corporation.

Alternatively, Plaintiff argues that jurisdiction exists over Upsy Daizy and Paul Thomas, as they acted as Tiffany Jaecke's alter ego.[1] "As a general rule, each defendant's contacts with the forum state must be assessed individually. U, 465 U.S. 783, 790 (1984). However, the actions of one defendant may be attributed to another where one is the 'alter ego' of the other, for example, in a subsidiary-parent corporation relationship. *See Niemi v. NHK Spring Co.*, 276

---

[1] In reply to the alter ego argument, Defendants argue that as Plaintiff's Complaint contains no allegations regarding an alter ego relationship, this argument may not be considered. I'd recommend that you consider the arguments, as this case is very early in the proceedings, and Plaintiff would generally be granted leave to amend its complaint to make such an allegation.

6

F.Supp.2d 717, 721 (E.D.Mich.2003)." Children's Orchard, Inc. v. Children's Orchard Store No. 142, Inc., 2010 WL 2232440 E.D.Mich.*6 (Judge Rosen) "An alter ego is treated as a single continuous employer, and the contractual obligations of one element of the alter ego are therefore binding on the others." Id..

Here, Plaintiff points out that Defendants provide no documentation of the transaction between Tiffany Jaecke and Defendant Thomas regarding the transfer of the franchise shop to her father or to Upsy Daizy, the antecedent debt, or any other documentation demonstrating that corporate formalities have been followed. In addition, Tiffany Jaecke has managed the operations of the new store; she set up and maintains its internet presence; she executed the opening of Upsy Daizy; she recruited her former COI employees to work for Upsy Daizy; and continues to use proprietary COI business forms, COI's Buy Register, and other COI fixtures at the new store. Plaintiff contends that other than Paul Thomas being the only listed owner of Upsy Daizy, Tiffany Jaecke's contractual obligations, including her consent to personal jurisdiction in Michigan is binding on the other Defendants as they act as her alter ego.

In this matter, the Court believes that a finding of long-arm personal jurisdiction is appropriate. Such finding would not offend traditional notions of fair play and substantial justice, as it is reasonable that Paul Thomas, being Tiffany Jaecke's own father, would or should be aware of Jaecke's contractual obligations to Plaintiff. In addition, there are sufficient allegations that Jaecke was intimately involved in the development and continued operation of Upsy Daizy, and that both her father and Upsy Daizy serve as her alter ego. Contrary Children's Orchard, Inc. v. Children's Orchard Store No. 142, Inc., 2010 WL 2232440 E.D.Mich.*6 (Judge Rosen), quoted and cited above in which personal jurisdiction was not found because of the

arm's length transaction that took place, here we are dealing with family members, with money changing hands between such family members, and with ongoing assistance in the operation of the business by such family members.

Plaintiff also offer a "conspiracy theory" in support of personal jurisdiction, arguing that in the event that the alter ego status is insufficient, then the Court may find personal jurisdiction over Defendants based on their conspiracy with Tiffany Jaecke. The Sixth Circuit has neither accepted nor rejected the conspiracy theory of *in personam* jurisdiction, and the alter ego standard is sufficient for this analysis. In addition, the conspiracy theory is a stretch, and its analysis is not necessary. The Court finds that Michigan's long arm statute, and constitutional tests of fair play and substantial justice, support a finding of personal jurisdiction over Defendants

## IV. Order

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss is DENIED.


Dated: February 14, 2011        s/Bernard A. Friedman
       Detroit, Michigan        BERNARD A. FRIEDMAN
                                UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 14, 2011, by electronic and/or ordinary mail.

                                s/Felicia Moses for Carol Mullins
                                Case Manager